Taft, J.
At the outset, it should be observed that this action has not been brought against Goldman, the only bailee with whom the owner of the coat dealt. Neither has there been any assignment of error in this court with respect to the failure to make Goldman a party defendant. Furthermore, no contention has been made that, and hence it is unnecessary to consider whether, the provisions of either of the two bailment contracts, with respect to the valuation of the fur coat, are invalid as against public policy. See Baltimore & Ohio Rd. Co. v. Hubbard, 72 Ohio St., 302, 317, 74 N. E., 214; United States Express Co. v. Backman, 28 Ohio St., 144; Central Storage Warehouse Co. v. Pickering, 114 Ohio St., 76, 151 N. E., 39; and Kolt v. Cleveland Trust Co., 156 Ohio St., 26, 99 N. E. (2d), 902, 27 A. L. R. (2d), 525.
*436 Admittedly, the rights of plaintiff insurance company, that paid the owner for loss of her fur coat, can rise no higher than her rights. United States Fire Ins. Co. v. Phil-Mar Corp., 166 Ohio St., 85, 139 N. E. (2d), 330.
There is no allegation that defendant ever knew or had any reason to know that Goldman was without power or authority to make any subcontract of bailment ■ or to deliver the fur coat to defendant pursuant to the terms of such a subcontract; there is no allegation that the owner ever even notified or advised defendant of her interest in the coat prior to its loss; and there are no other allegations in the petition which could support a finding that defendant was a converter. 1 Restatement of the Law of Torts, Section 223. The mere negligence of a bailee in caring for the bailed property will not amount to a conversion. 1 Restatement of the Law of Torts, Section 224. It is apparent therefore that no cause of action against defendant for conversion has been set forth in the petition.
From the allegations of the petition, it is clear that this is an action to recover from defendant for the claimed negligence of defendant in failing to exercise ordinary care for the protection of the fur coat. The charge of the trial court so regarded it.
It is elementary that a person’s failure to exercise ordinary care in doing or failing to do something will not amount to actionable negligence unless such person owed to someone injured by such failure a duty to exercise such ordinary care. See First National Bank of Greenfield v. Marietta & Cincinnati Rd. Co., 20 Ohio St., 259, 5 Am. Rep., 655; Toledo & Ohio Central Rd. Co. v. Bowler & Burdick Co., 63 Ohio St., 274, 58 N. 2., 813; Pittsburgh, Ft. Wayne & Chicago Ry. Co. v. Bingham, Admx., 29 Ohio St., 364, 23 Am. Rep., 751; Hannan, Admr., v. Ehrlich, 102 Ohio St., 176, 131 N. E. 504; 38 American Jurisprudence, 652, Section 12.
Where, otherwise than by a mutual contract of bailment, one person has lawfully acquired the possession of personal property of another, the one in possession is, by operation of law, generally treated as a bailee of such property and may therefore reasonably be referred to as a constructive bailee. 6 American Jurisprudence, 237, Section 86; Dobie on Bailments *437 and Carriers, 23, Section 11; see 34 American Jurisprudence, 636, Section 7.
Ordinarily such constructive bailee will receive nothing from the owner of the property and will have no right to recover from such owner anything for what he does in caring for such property so that he is in effect an uncompensated or so-called gratuitous bailee. 6 American Jurisprudence, 237, Section 86; Dobie on Bailments and Carriers, 51, Section 22. Hence, there is no more reason for the law imposing upon such constructive bailee any duty to the owner with respect to care for such property than there is for imposing such a duty on any other unncompensated or so-called gratuitous bailee. As a result, no greater duty is ordinarily imposed upon such a constructive bailee. 6 American Jurisprudence, 238, Section 86 (constructive bailee “regarded as a gratuitous bailee”); 6 American Jurisprudence, 358, Section 252 (“general agreement among the authorities that * * * reasonable to expect the bailee’s obligation of care to be less onerous where he acts without reward than where he is compensated”); Dobie on Bailments and Carriers, 34, Section 16 (“degree of care exacted of * * * bailee varies directly with * * * benefit accruing to * * * bailee from * * * bailment. When * * * bailor receives all * # * benefit * * * and * * * bailee none, * * * standard of care is * * # lowest”).
Although a compensated bailee owes to his bailor a duty to exercise ordinary care to protect the bailed property, an uncompensated or so-called gratuitous bailee does not owe to his bailor a duty to exercise such care to protect the bailed property.
Paragraph one of the syllabus of Griffith v. Zipperwick, 28 Ohio St., 388, reads:
“In case of a deposit of property, to be kept by the bailee without reward and returned to the depositor on demand, the law holds such a bailee liable only for losses arising from his gross negligence.”
Paragraphs three and four of the syllabus of Toledo & Ohio Central Bd. Co. v. Bowler & Burdick Co., supra (63 Ohio St., 274), state that there can “not” be such “gross negligence” unless there is “that gross neglect of duty which amounts to wilfulness and evinces a reckless disregard of the rights of others.”
*438 The opinion by Scott, J., in First National Bank v. Marietta & Cincinnati Rd. Co., supra (20 Ohio St., 259), at 280, even indicates that one, having duties such as those of an uncompensated bailee, may be held only for damage caused by his wilfulness or “ wantonness. ”
Notwithstanding the syllabus of Griffith v. Zipperwick, supra, there has been considerable criticism of the subdivision of negligence into degrees. See Payne, Dir. Genl., v. Vance, 103 Ohio St., 59, 133 N. E., 85. See also Dobie on Bailments and Carriers, 35, Section 16; 6 American Jurisprudence, 348, Section 245. However, in the instant case it is only necessary to determine whether defendant did or did not owe to the owner a duty to exercise ordinary care in protecting her fur coat. It is not necessary to consider what, if any, lesser duty of care defendant owed to the owner with respect to protecting her fur coat. In deciding this case, it is sufficient to recognize, as all the authorities apparently do, that an uncompensated or so-called gratuitous bailee does not owe to the owner of the bailed property a duty to exercise ordinary care and hence is not liable for mere negligence with respect to the care of such property. Griffith v. Zipperwick, supra (28 Ohio St., 388); 7 Ohio Jurisprudence (2d), 110, Section 26; 6 American Jurisprudence, 360, Section 254; Dobie on Bailments and Carriers, 65, Section 29.
The petition alleges merely that defendant failed to exercise ordinary care for the protection of the owner’s coat and that defendant was therefore negligent; and, under the court’s charge, the verdict of the jury obviously represents merely a finding that defendant failed to exercise such ordinary care and that defendant was therefore negligent. Thus, the petition does not contain allegations and the verdict does not represent a finding that would support a judgment against a defendant who did not have a duty to exercise ordinary care for the protection of the owner’s fur coat.
In order to establish defendant’s duty as one to exercise the degree of care that the petition alleges that defendant failed to exercise, i. e., the duty to exercise ordinary care for the protection of the owner’s fur coat, it was necessary for plaintiff to allege and prove either (1) a contract of bailment between that *439 owner and defendant expressly providing therefor (admittedly there never was snch a contract) or (2) that there was a bailment by or on behalf of that owner to defendant under which defendant was to be compensated for its services, so that the law would imply a duty of defendant to that owner, to exercise such care. 6 American Jurisprudence, 290, Section 172. See Dobie on Bailments and Carriers, 34 to 36, Section 16.
Plaintiff has done that by alleging and proving the owner’s contract of bailment to Goldman and a subcontract of bailment by Goldman to the defendant.
Having so elected to rely on the owner’s contract of bailment and her bailee’s subcontract of bailment to impose such a duty of ordinary care of defendant to the owner, plaintiff is at least bound by the agreement made by the owner of the coat that the value of the coat shall be considered as not over $100, an agreement that the owner’s testimony clearly shows she intended to make and an agreement that is admittedly found in the written contract of bailment that that owner did make with Goldman. Central Storage Warehouse Co. v. Pickering, 114 Ohio St., 76, 151 N. E., 39.
Thus, if plaintiff takes the position that there was no contractual privity between the owner of the coat and defendant,. we are necessarily led to the conclusions that defendant did not owe to the owner of the fur coat the duty to exercise ordinary care to protect that coat; and that, since the allegations of the petition will only support a finding that defendant merely failed to exercise such ordinary care, plaintiff can recover nothing. In order to establish that the law imposed upon the defendant a duty to exercise the degree of care for the protection of the coat that the petition alleges defendant failed to exercise, i. e., the duty to exercise ordinary care, it was necessary for plaintiff to have the owner rely upon the contract of bailment between the owner of the coat and Goldman and a subcontract of bailment between Goldman and defendant; and the plaintiff, having so elected to have the owner rely on those contracts, is at least bound by such owner’s own agreement, which she intended to and did make in the contract of bailment with Goldman, that the value of the coat was $100.
In order to avoid the owner’s agreement that the value *440 of the coat should be considered as $100 and liability for its loss limited to that amount, which agreement is found in the contract of bailment between the owner and Goldman, the Court of Appeals determined that that contract was abrogated because, Goldman converted the coat when he delivered it to defendant. It is reasonably arguable that there are allegations in the petition which could support a conclusion that Goldman converted the coat when it delivered the coat to defendant.* If we assume that the allegations of the petition could support that conclusion, nevertheless it is apparent from the allegations of the petition that neither plaintiff nor the owner of the fur coat ever elected to treat Goldman as a converter. If the owner of the coat had elected to do so and had been correct in so contending, then the owner would have had a right against Goldman to recover for the value of the coat. Conkle v. George K. Scott Co., Inc., 147 Ohio St., 487, 72 N. E. (2d), 82; Aetna Casualty & Surety Co. v. Higbee Co., 80 Ohio App., 437, 76 N. E. (2d), 404, 174 A. L. R. 1429; annotation, 99 A. L. R., 266. In electing to treat Goldman as a converter, the owner of the coat would necessarily have had to recognize the coat as having been converted by and thereby as having become the property of Goldman. Sammis v. Sly, 54 Ohio St., 511, 519, 44 N. E., 508, 56 Am. St. Rep., 731. Thus, wjiere a bailee of personal property does something that may amount to a conversion of that property, if the owner elects to treat the bailee as a converter, the owner thereby in effect requires “a forced sale of the property to the” bailee. Prosser on Torts (2d), 66, Section 15. If the coat had thus become the property of Goldman, then obviously neither the owner nor plaintiff could now, without taking an inconsistent position, recover anything from defendant on account of its damage. Any cause of action on account of such damage would then be vested in Goldman.
*441 Furthermore, if the Court of Appeals was correct in considering the contract of bailment between the owner and Goldman as abrogated, the consequence would necessarily be no contractual relationship between the owner of the coat and defendant; and, as hereinbefore pointed out, defendant would then have owed to the owner of the coat no duty to use ordinary care for its protection; and, since the allegations of the petition are that defendant merely failed to exercise such ordinary care, plaintiff could recover nothing.
In order to establish defendant’s duty as one to exercise ordinary care for protection of the owner’s coat, it was essential for plaintiff to establish some contractual privity between the owner and defendant. This the plaintiff obviously attempted to do by the allegations of the petition, which apparently recognize that the owner’s contract with Goldman did, as defendant’s answer alleges, authorize Goldman to enter into a subcontract for bailment of the coat with defendant. However, there is no allegation in the petition or any evidence in the record that would support a conclusion that the owner either authorized or consented to or knew of Goldman’s agreeing in such a contract of bailment that the value of the coat should be considered as being less than $100. Hence, under our holding in Agricultural Ins. Co. v. Constantine, 144 Ohio St., 275, 58 N. E. (2d), 658, paragraph three of the syllabus, the owner would not be bound by any agreement in that subcontract of bailment so “limiting the bailee’s liability * * * in the absence of anything to indicate that the * * * [owner] either expressly or impliedly assented to such” liability-limiting agreement. See also Grain Dealers National Fire Ins. Co. v. Union Co., 159 Ohio St., 124, 111 N. E. (2d), 256.
Defendant may reasonably argue that it should not have any liability imposed upon it for a failure to exercise ordinary care for the protection of this coat in excess of that for which defendant contracted. However, defendant was admittedly in the business of wholesale fur storage and must have known that some of the coats to be sent by Goldman to defendant for storage were owned by others. If defendant was willing to rely on the representation that Goldman in effect made with respect to this fur coat (i. e., that he had authority to contract with defendant for *442 limitation of defendant’s liability on the basis of valuation of the coat at only $1), any resulting loss to defendant by reason of defendant’s greater liability would appear to be a matter for adjustment in legal proceedings between defendant and Goldman.
If plaintiff disregards the contract of bailment made by the owner with Goldman and argues that defendant owed a duty to such owner to use ordinary care to protect the coat because that was defendant’s business and defendant was paid 75 cents by Goldman for doing so, plaintiff is then taking the position that there was no contractual relationship or contractual privity between the owner and defendant. If plaintiff relies on the payment of that 75 cents to make defendant a compensated bailee, it is apparent that defendant is such a compensated bailee owing such duty of ordinary care only to Goldman who paid defendant and with whom defendant contracted and not to the owner of the coat whom plaintiff would then be treating as a stranger to defendant. Also, it may be observed that the 75-cent payment was compensation only for performing the services to be performed in picking up, storing and delivering the coat, and for undertaking in addition a risk of potential liability in taking care of a $1 coat, and not for undertaking the much greater risk of potential liability in taking care of an $1,800 coat. In other words, plaintiff would be trying to get something for which no one had paid.
The allegations of the petition are that defendant merely failed to exercise ordinary care for the protection of the coat. Unless plaintiff relies upon the contract of bailment between the owner and Goldman and Goldman’s authority thereunder to contract with defendant for care of the coat, there is no basis whatever for imposing upon defendant a duty to exercise ordinary care for the protection of the coat. If plaintiff does so rely on that contract of bailment between the owner of the coat and Goldman, as the allegations of its petition clearly indicate it did, then plaintiff’s recovery cannot exceed $100. However, as hereinbefore pointed out, there is no justification for binding the owner by that part of the agreement between Goldman and defendant that provides that the value of the coat should be considered as only $1.
*443 Our conclusions are that the trial court was correct in regarding this action as what the petition clearly indicates it is, i. e., an action to recover damages proximately resulting from a breach of defendant’s duty to exercise ordinary care for the protection of the coat, a duty necessarily based upon the alleged and proven two contracts of bailment; that the trial court was therefore correct in charging the jury that, if defendant failed to exercise ordinary care for the owner’s coat, such failure would constitute negligence, and, if such negligence was a proximate cause of the loss of the owner’s coat, plaintiff could recover, but that any recovery by plaintiff should be limited to $100; that the Court of Appeals was correct in its holding that the undisputed evidence requires a finding that the value of the coat was in excess of $100; but that the Court of Appeals was in error in its holding that plaintiff could recover more than $100 by disregarding the first contract of bailment, both because plaintiff’s petition indicates a reliance on that contract and because, without that contract, defendant would have owed to the owner of the coat no duty to exercise ordinary care for its protection and the allegations of the petition would then have justified the recovery of nothing from defendant. It follows that the judgment of the Court of Appeals must be modified by reducing its amount to $100, and, as so modified, that judgment is affirmed.

Judgment modified and, as modified, affirmed.

Stewart, Matthias and Herbert, JJ., concur.
Weygandt, C. J., Zimmerman and Bell, JJ., dissent.

This would depend on whether authority to make a subcontract of bailment may be implied when the words used in the owner’s contract of bailment are considered in the light of the facts and circumstances under which that contract was made. The question almost always arises in an action to hold the original bailee as a converter. See annotation, 174 A. L. R., 1436; Rourke v. Cadillac Automobile Co., 268 Mass., 7, 167 N. E., 231; 23 Michigan Law Review, 196.